CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/20/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Ariel Liberato, et al., ) | |
|     Plaintiffs, ) | Civil Action No. 3:19cv00042 |
| ) | |
| v. ) | MEMORANDUM OPINION & ORDER |
| ) | |
| Armor Corr. Health Services, Inc., et al., ) | By:   Joel C. Hoppe |
|     Defendants. ) |         United States Magistrate Judge |

Before the Court is non-party Virginia Department of Corrections's ("VDOC") Motion to Modify Third-Party Subpoena ("Motion"). ECF No. 54. Having considered the parties' filings and oral arguments, and for the reasons stated herein, the VDOC's Motion is hereby GRANTED in part and DENIED in part.

## I. Background

This matter arises out of a wrongful death suit against various employees of the VDOC and Armor Correctional Health Services, Inc. ("Armor"). *See* Compl., ECF No. 1. The Plaintiffs are the daughters of the decedent, Carolyn Liberato, who was incarcerated at the Fluvanna Correctional Center for Women ("FCCW") at the time of her death from "cardiovascular complications" on July 21, 2017. *Id.* ¶¶ 4–5. The FCCW is operated by the VDOC, *id.* at 2 n.1, who is not a party to the case. Armor contracted with the VDOC to provide medical care to inmates at prisons, including the FCCW, between November 2015 and October 2018. *Id.* ¶ 6.

Ms. Liberato had a history of diabetes, obesity, heart attack, and congestive heart failure, and her symptoms included rapid weight gain, edema, lethargy, shortness of breath, sweating, and high blood pressure, cholesterol, and triglycerides. Compl. ¶¶ 13, 153. The Plaintiffs' claims center around numerous alleged deficiencies in medical care for these impairments, including delays in treatment, incomplete examinations, poor charting, lack of equipment, inadequate

training, unqualified nursing staff, delays in responding to medical emergencies, and poor communication to providers. *See id.* ¶¶ 29, 31, 53–72, 143.

On January 29, 2020, pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Plaintiffs issued a subpoena duces tecum to the VDOC requesting production of ten categories of documents. *See generally* VDOC's Mem. in Supp. Ex. A, at 1–16, ECF No. 55-1. On February 19, 2020, the VDOC submitted to the Plaintiffs its objections and responses. *See* VDOC's Mem. in Supp. 2, ECF No. 55. On February 26, 2020, the VDOC filed its Motion. The VDOC argues that the subpoena is overbroad and imposes an undue burden because it seeks "all" documents related to the ten topics. *Id.* at 4. The VDOC also argues that Requests One, Two, Five, Seven, Nine, and Ten are disproportionate to the needs of the case, outside the scope of discovery, and irrelevant because they relate to other inmates' confidential information rather than the specific care provided to Ms. Liberato.[1] *Id.* at 5–6, 8–9. Third, the VDOC argues that Requests Three and Four about the disposition of Ms. Liberato's personal property are not relevant to any claims in the Complaint. *Id.* at 7. Fourth, the VDOC argues that Request Eight, which seeks all documents that "discuss or refer to" Ms. Liberato, is overbroad because it is not limited to documents from a specific person, a specific period, or about a specific issue. *Id.* at 8. Finally, the VDOC argues that the Plaintiffs are not entitled to documents from the *Scott v. Clarke* litigation because the Plaintiffs have named Stephen Herrick and Harold Clarke in their individual rather than their official capacities. *Id.* at 9–10; *see Scott v. Clarke*, No. 3:12cv36 (W.D. Va. filed July 24, 2012).

The Plaintiffs argue that the VDOC waived its objections to the subpoena because they

---

[1] The VDOC does not specifically mention Request Six, but it is essentially the same as Request Five— i.e., both ask for all email communications to, from, or including Defendant Stephen Herrick, the VDOC's Health Services Director and Defendant Harold Clarke, the Director of the VDOC, between March 1, 2016, and July 31, 2017.

2

were untimely and neither good cause nor unusual circumstances exist that excuse the VDOC's late objections. Pls.' Mem. in Opp'n 6–8, ECF No. 58. The Plaintiffs also argue that the VDOC misunderstands their claims against Defendants Herrick and Clarke and that information about other inmates' medical care is essential to the deliberate indifference claim in Count III of the Complaint.[2] *Id.* at 14–20. Third, the Plaintiffs argue that Requests Three and Four regarding Ms. Liberato's personal property are relevant to the Defendants' potential defense to causation because in *Scott v. Clarke*, some of these same Defendants argued that Ms. Liberato was responsible for her own death by hoarding medications.The Plaintiffs are also concerned about the spoliation of evidence. *Id.* at 22–23. Regarding Request Eight, Plaintiffs argue the requested documents are relevant because they would include information about Ms. Liberato's housing assignment, which may indicate the level of medical care, and about her security level, good time credits, and disciplinary record, which may have indicated her potential release date. *Id.* at 23–24. As to the proportionality of the requests, Plaintiffs assert that the VDOC does not describe with specificity the burden responding to the requests will place on governmental resources.

The VDOC filed its Reply on March 18, 2020, ECF No. 59, and a Supplemental Response on March 19, 2020, ECF No. 61. On April 9, 2020, this Court held a telephonic hearing at which counsel for the parties and for the VDOC appeared.

## II. Legal Framework

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 45(a), a party to

---

[2] Count III alleges that Defendants Herrick and Clarke were aware that Armor was systematically failing to provide constitutionally adequate care to inmates, including Ms. Liberato. Pls.' Mem. in Opp'n 14–20.

3

litigation may serve on a non-party to the litigation a subpoena for the production of discoverable material in the non-party's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii); *In re Subpoena of Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) (per curiam). The scope of civil discovery from a non-party is "'the same as the scope of a discovery request made upon a party to the action,' and 'a party is entitled to information that is relevant to a claim or defense in the matter' at issue." *Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (quoting *Smith v. United Salt Corp.*, No. 1:08cv53, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009)); *see also Brown v. Mountainview Cutters, LLC*, No. 7:15cv204, 2016 WL 3045349, at *3 (W.D. Va. May 27, 2016) ("The scope of discovery allowed under a [Rule 45] subpoena is the same as the scope of discovery allowed under Rule 26.").

The rules governing non-party subpoenas are coextensive with the general rules governing all civil discovery; thus, a non-party cannot be required to produce any material that a party to the litigation would not also be required to produce. *See Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) (per curiam) (citing Fed. R. Civ. P. 26(b)(1)); *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 434–35 (D. Md. 2012). A "non-party may contest the subpoena," *Am. Nurses Ass'n*, 643 F. App'x at 314, by timely filing a motion in the proper district court, and the court "must quash or modify a subpoena that . . . subjects a person to undue burden,"[3] Fed. R. Civ. P. 45(d)(3)(A)(iv). Where, as here, "a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va.

---

[3] A court must also quash or modify a subpoena that fails to allow a reasonable time to comply, requires the person to comply beyond the Rule's geographical limits, or demands disclosure of privileged or other protected matter, and it may quash or modify a subpoena that would require the person to disclose certain protected information. Fed. R. Civ. P. 45(d)(3)(A)–(B).

4

2008); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2010).

### III. Analysis

First, I will address the issue of timeliness. The failure to make timely objections to a subpoena duces tecum ordinarily will waive any objections. Fed. R. Civ. P. 45(d)(2)(B); *see In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) (collecting cases). Objections must be served within the earlier of fourteen days or the time specified for compliance. Fed. R. Civ. P. 45(d)(2)(B). Unusual circumstances and good cause, however, may excuse untimely objections. *In re Motorsports*, 186 F.R.D. at 349. Unusual circumstances and good cause include a subpoena that is facially overbroad, a subpoena that would impose significant expense on a nonparty acting in good faith, or evidence that the parties' counsel were discussing the subpoena, compliance, and objections before bringing the matter to court. *Id.* I find that the subpoena in this case is overbroad. Additionally, I find that the Plaintiffs suffered no prejudice as the VDOC served its objections on February 19, 2020, which was within the time for compliance, and only six days after the fourteen days required by Rule 45. Given the fact that the VDOC is a nonparty and the subpoena is facially overbroad, I find good cause to excuse the VDOC's untimely objections.

Turning to the substance of the objections, the VDOC first asserts that the allegations of supervisory deliberate indifference by Defendants Herrick and Clarke concern the specific medical care provided to Ms. Liberato; thus, the VDOC argues, the medical records of other inmates are irrelevant to Plaintiffs' claim. *See* VDOC's Mem. in Supp. 5–6. But, plaintiffs generally are "masters of their complaint[s]," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005), and these Plaintiffs' Complaint is not so limited as the VDOC asserts. The Plaintiffs

5

allege that Defendants Herrick and Clarke knew Armor was systematically failing to provide constitutionally adequate medical care at the FCCW, which subjected inmates like Ms. Liberato to a pervasive risk of harm. *See generally* Compl. ¶¶ 99–133. Furthermore, Defendants Clarke and Herrick allegedly failed to correct Armor's systemically deficient medical care at the FCCW. *See id.* The Defendants have not moved to dismiss these specific claims on the grounds that they fail to state a claim that Defendants acted with "deliberate indifference." *See Jones v. Va. Dep't of Corrs.*, No. 2:18cv517, 2019 WL 2061955, at *2, *6 (E.D. Va. May 9, 2019) (rejecting the VDOC's argument that a plaintiff must plausibly allege that a supervisory defendant was "specifically aware of the plaintiff and her medical needs" in order to state a claim for deliberate indifference under the Eighth Amendment). As such, the Plaintiffs are entitled to discovery that is relevant to their claims, as defined by cases interpreting the Eighth Amendment.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement," including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prisoners alleging unconstitutional conditions of confinement must satisfy the two-pronged test the Supreme Court set forth in *Farmer v. Brennan*. Under the first prong, the plaintiff must show that "the deprivation alleged [was], objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. In a deliberate indifference to medical needs case, the plaintiff must demonstrate an official's deliberate indifference to a "serious" medical need that was either diagnosed by a physician or was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Under the second prong, a plaintiff must show that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The required state of mind in conditions of confinement cases is deliberate indifference. *Id.* The plaintiff proves deliberate indifference by showing that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. "Deliberate indifference" requires "more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. The Fourth Circuit has held that supervisory liability for deliberate indifference has three requirements. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff must first show "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff." *Id.* (internal quotation marks omitted).The second element requires the plaintiff to show "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *Id.* (internal quotation marks omitted). Finally, the plaintiff must show "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.*

A plaintiff can meet the subjective knowledge requirement in two ways. *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016). The plaintiff can provide "direct evidence of a prison official's actual knowledge" of her medical condition and treatment or "demonstrate[] that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it." *Id.* (internal quotation marks omitted) (quoting *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir.

2004)); *see also Shaw*, 13 F.3d at 799 (noting plaintiff must show "that the supervisor had actual or constructive knowledge"); *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987) (finding that "[c]onstructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of" his official responsibilities the official should have known of them). A put differently, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was" specifically at risk. *Farmer*, 511 U.S. at 843. A "pervasive . . . risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799*; see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) ("A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.").

Because a plaintiff can satisfy the subjective knowledge requirement of a § 1983 deliberate indifference to serious medical needs claim by showing a widespread and pervasive practice that put a defendant on notice of constitutionally inadequate care and the risk to those like Ms. Liberato, Plaintiffs in this case are entitled to discovery that may show widespread and pervasive practices in the FCCW's medical operations contributed to Ms. Liberato's death. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000) (explaining that "[r]elevance for discovery purposes is defend more broadly than relevance for evidentiary purposes," and that, while the "pleadings are the starting point from which relevancy and discovery are determined, relevancy is not limited to the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information" (cleaned up)). Information about widespread and pervasive healthcare practices would likely cover medical information

about inmates other than Ms. Liberato of which Defendants were aware. The Plaintiffs are not, however, entitled to the medical records of *all* inmates between March 1, 2016, and July 31, 2017, because production of that volume of documents would cover information, such as records related to minor medical issues, not relevant to the allegations in the Complaint and would create an undue burden. The Court agrees that some information about other inmates' medical conditions and treatment likely is relevant to the Plaintiffs' claim against Defendants Herrick and Clarke. Accordingly, I will limit the type of records that the VDOC must produce to those that concern medical emergencies or serious medical conditions that could lead to hospitalization. This limitation is necessary because only the most significant medical issues would have been likely to come or should have come to the attention of high ranking VDOC officials, such as Herrick or Clarke. Additionally, only records about serious medical issues would be relevant to show a causal link between a supervisor's inaction and Ms. Liberato's death. *See Carter v. Morris*, 164 F.3d 215, 219 (4th Cir. 1999).[4]

      The VDOC also challenges the subpoena as disproportionate to the needs of the case, arguing that the issues here are less significant because they involve claims for money damages arising from allegedly inadequate medical care for one individual, whereas the claims in *Scott v. Clarke* sought injunctive relief that would cover the medical care for all prisoners at the FCCW. Because the nature of the Plaintiffs' claims is narrower, the VDOC asserts that discovery must be

---

[4] The VDOC also argues that many of the responsive documents consist of other inmates' medical information that is protected under health privacy laws. VDOC's Reply Br. 3. "[O]therwise-discoverable private medical information of non-parties can be protected adequately by crafting an appropriate protective order. The private nature of the information does not shield it from discovery." *Scott v. Clarke*, No. 3:12cv36, 2013 WL 6158458, at *7 (W.D. Va. Nov. 25, 2013) (citing *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489–92 (4th Cir. 1992)). I entered a protective order in this case on October 30, 2019, which applies to any documents produced by third parties or non-parties pursuant to a subpoena that is designated as "confidential." Order of Oct. 30, 2019 at 1, ECF No. 44. The protective order should adequately protect the privacy interests of third parties.

similarly curtailed. I agree with the VDOC that this case is different in scope from the *Scott v. Clarke* litigation. Even so, Plaintiffs' allegations are serious, and their claims are significant. They involve allegations that Defendants deprived Ms. Liberato of adequate medical care while incarcerated—an important constitutional right—that caused her death. The scope of the claims and relief sought in *Scott v. Clarke,* however, were much broader in that they concerned the right to constitutionally adequate medical care of every current and future inmate at the FCCW, including Ms. Liberato before she died. Although I agree that the scope of *Scott v. Clarke* was broader, I disagree with the VDOC's assertion that the *Scott v. Clarke* litigation was of a different nature and focused on a breach of contract dispute. The original lawsuit centered entirely on the constitutional adequacy of medical care at the FCCW. The Honorable Norman K. Moon, presiding District Judge, found that contract law imposed liability on the VDOC for breaching the settlement agreement because of a unusual procedural issue that arose in the enforcement phase of that case, but he also made very clear that the Defendants failed to abide by the Eighth Amendment and to provide adequate medical care to inmates at the FCCW. *Scott v. Clarke*, 355 F. Supp. 3d 472, 495–500, 506 (W.D. Va. 2019) (concluding that the "pervasive constitutionally deficient medical care" at the FCCW continued and that the "Defendants have upheld neither their Eighth Amendment obligations nor the Settlement Agreement they reached to effectuate those obligations").

This case similarly revolves around allegations of constitutionally deficient medical care and the Defendants' knowledge of widespread practices at the FCCW that led to Ms. Liberato's death. As noted above, the Plaintiffs are entitled to information relevant to their claims that Defendants Herrick and Clarke knew of the allegedly constitutionally deficient care and the risk it posed to those like Ms. Liberato. *See Estate of Chance v. First Corr. Med., Inc.*, 329 F. App'x

10

340 (3d Cir. 2009) (upholding the district court's decision to allow decedent prisoner's estate to discover documents from an unrelated Department of Justice ("DOJ") investigation into Delaware prisons that related to the defendant prison administrator's knowledge of the quality of medical care at the prison as well as discussions of cost and resource allocation for medical care at the department of corrections facilities, but plaintiff was not entitled to documents produced to the DOJ about the medical vendor who took over the prison contract two years after the decedent's death). Thus, the scope of information proportionate to the needs of this case includes some discovery about third-party inmates' medical records, but discovery should be limited to serious matters that did or should have come to Defendants Herrick's and Clarke's attention (i.e., medical emergencies or the treatment of serious, chronic medical conditions that could lead to death and hospitalization at the FCCW).

Considering Plaintiffs' allegations under the legal framework outlined above, I find that some of the Plaintiffs' requests are overbroad or otherwise seek irrelevant information, but that other requests are relevant and proportional; thus, the subpoena will be modified as follows[5]:

1. Request One seeks all medical requests "submitted by Carolyn Liberato and/or on behalf of Carolyn Liberato during calendar year 2017." VDOC's Mem. in Supp. Ex. A, at 1. The VDOC has asserted that Ms. Liberato did not submit any informal complaints, regular grievances, or emergency grievances, which are the types of forms Ms. Liberato could submit for medical requests, during the calendar year 2017, and the Plaintiffs acknowledged that they have no evidence to suggest otherwise. The VDOC produced to Plaintiffs a "grievance report" that showed Mr. Liberato filed her most recent complaint

---

[5] The VDOC also argues that the use of the word "all" makes Plaintiffs' requests overbroad. I do not agree. Although some of Plaintiffs' requests are overbroad, after they are modified to narrow their scope, it is proper that Plaintiffs then receive all relevant documents.

11

in 2015. Absent evidence to the contrary, I take the VDOC at its word and find that it has complied with the first portion of Request One. Regarding the second portion of Request One (all medical requests submitted on behalf of Ms. Liberato), I find this request covers information that is irrelevant and unduly burdensome. The VDOC has represented that complaints submitted by one inmate on behalf of another inmate are summarily rejected at intake and are not recorded on the person's grievance report for whom it was submitted. Because such complaints are rejected at intake, they would not provide relevant information about what any of the Defendants knew of Ms. Liberato's medical condition or treatment. Furthermore, requiring the VDOC to search through every other inmate's grievance report for the calendar year 2017 to look for any reference to Ms. Liberato would be unduly burdensome. Therefore, I will modify Request One to strike the second portion of the request regarding medical grievances or requests filed on behalf of Ms. Liberato.

2. Request Two seeks all medical requests submitted by any FCCW inmate between March 1, 2016, and July 31, 2017. VDOC's Mem. in Supp. Ex. A, at 3. As noted above, the VDOC's argument that all other inmates' requests are irrelevant to the Plaintiffs' claims is not persuasive. Although the Plaintiffs contend that they attempted to simplify the request to reduce the burden on the VDOC, the request is nonetheless overbroad, and must be modified. For documents to be relevant they must involve a serious medical condition and have been likely to come to the attention of Herrick or Clark. Accordingly, the VDOC shall produce all "medical grievances and/or any other form of written medical requests submitted by inmates at [the FCCW] during the period of time spanning (and including) March 1, 2016–July 31, 2017," *id.*, for inmates who (1) had medical

12

emergencies or who have or had serious, chronic medical conditions that (2) could lead to hospitalization or death. Medical grievances by inmates on other issues are irrelevant and need not be produced. In this regard, the Court can discern no relevance to medical grievances filed for minor conditions.

3. Requests Three and Four seek all documents regarding the property that was found in Ms. Liberato's cell after her death and the disposition of that property. VDOC's Mem. in Supp. Ex. A, at 5, 6. According to the VDOC, few responsive documents exist; thus, I find the burden of production is slight. Furthermore, I find that the documents are potentially relevant to the claims and defenses in this case in that the documents may contain information about Ms. Liberato's medications and her medical condition. Accordingly, the VDOC shall produce all documents that pertain to the inventorying and disposition of Ms. Liberato's personal property after her death.

4. Requests Five and Six seek "[a]ll email communications by and/or to and/or copying Stephen Herrick [or Harold Clarke] concerning [the FCCW] occurring during the period of time spanning (and including) March 1, 2016–July 31, 2017." VDOC's Mem. in Supp. Ex. A, at 8, 9. I find that these two requests are overbroad in seeking all communications regarding the FCCW. Only those communications relating to the provision of prisoner medical care are relevant. Herrick and Clarke are high-ranking officials in the VDOC, and I presume they would be included in only those communications that discuss significant medical matters. Accordingly, the requests are modified to require the VDOC to produce all communications to, from, or including Defendants Herrick or Clarke that discuss medical operations or medical care at the FCCW.

5. Request Seven seeks "[a]ll emails, meeting minutes, internal reports, investigative reports, and/or any other documents which discuss and/or refer to medical operations (whether generally or regarding specific issues or incidents) at [the FCCW] during the period of time spanning (and including) March 1, 2016–July 31, 2017." VDOC's Mem. in Supp. Ex. A, at 11. As with Request Two, Request Seven is overbroad. Therefore, it is modified to require the VDOC to produce all documents from the specified time frame that discuss and/or refer to medical operations at the FCCW regarding medical emergencies or serious, chronic medical conditions that could lead to death or hospitalization and the treatment received for those conditions.

6. Request Eight seeks "[a]ll emails, meeting minutes, internal reports, investigative reports, and any other documents which discuss or refer to Carolyn Liberato." VDOC's Mem. in Supp. Ex. A, at 13. This request is somewhat overbroad in that some documents may be irrelevant to Ms. Liberato's medical conditions and treatment. Nevertheless, I agree with the Plaintiffs that institutional records, such as housing or work assignments, that do not explicitly discuss Ms. Liberato's medical condition and treatment may still relate to those issues. In its review, the VDOC should take care to produce all records that have some bearing on Ms. Liberato's medical condition and treatment. Accordingly, Request Eight is modified to cover any documents that include information relating to Ms. Liberato's medical condition or the treatment she received.

7. Request Nine seeks all documents that discuss and/or refer to the settlement agreement reached in *Scott v. Clarke* between March 1, 2016, and July 31, 2017. VDOC's Mem. in Supp. Ex. A, at 14. Request Ten seeks all documents that refer to any report created by Nicholas Scharff, M.D., the settlement agreement's compliance monitor, during the same

period. *Id.* at 15. The VDOC asserts that these requests are overbroad. I agree to an extent. As noted above, the requests are overbroad because this is not a class-action suit seeking injunctive relief on behalf of all current and future inmates at the FCCW. Nevertheless, documents referring to the settlement agreement or Dr. Scharff's reports are relevant to Defendants Herrick's and Clarke's knowledge about the allegedly inadequate medical care at the FCCW. *See Estate of Chance*, 329 F. App'x 340; *Scott*, 2013 WL 6158458, at *3. (holding that documents referring or relating to deficiencies or inadequacies in medical care at the FCCW were relevant to the "[p]laintiffs' claim regarding an on-going pattern and practice of sub-standard medical care on the part of the defendants"). The VDOC shall produce documents in response to Requests Nine and Ten, but the Court will modify the requests to include only information related to medical emergencies or the treatment of serious, chronic medical conditions that could lead to death and hospitalization at the FCCW.

Accordingly, the VDOC's Motion to Modify Third-Party Subpoena, ECF No. 54, is hereby **GRANTED in part** and **DENIED in part**.

It is so **ORDERED**.

ENTERED: May 20, 2020

Joel C. Hoppe
United States Magistrate Judge